DANIEL S. CHAFFIN and SARAH A. CHAFFIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chaffin v. Commissioner
Docket No. 5306-73.
United States Tax Court
T.C. Memo 1976-132; 1976 Tax Ct. Memo LEXIS 271; 35 T.C.M. (CCH) 590; T.C.M. (RIA) 760132; April 28, 1976, Filed Stanley A. Feingold,Stanton H. Zarrow, and Frederick A. Richman, for the petitioners. Nicholas G. Stucky, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined deficiencies of $4,559 and $6,831 in the joint Federal income tax returns of the petitioners for the taxable years 1969 and 1970, respectively. The primary issue for our decision is whether the "limited partnerships" involved in this proceeding constitute associations, taxable as corporations within the meaning of section 7701(a)(3). [1] In addition the petitioners have raised certain other issues which they term "constitutional and other issues." *272 FINDINGS OF FACT Petitioners, Daniel S. Chaffin and Sarah A. Chaffin, (hereinafter sometimes referred to as "petitioners") were husband and wife with legal residence in San Rafael, California, at the time they filed their petition herein. They filed joint Federal income tax returns for 1969 and 1970 with the Internal Revenue Service Center at Ogden, Utah. During the taxable years 1969 and 1970, petitioners were limited partners in Applegate-Del Nido I (hereinafter referred to as "Applegate-Del Nido"), a limited partnership formed under the laws of the State of California. During the same years the petitioners were also limited partners in Somis Orchards (hereinafter referred to as "Somis"), a limited partnership formed under the laws of the State of California. [2]
Some of the facts in this case were stipulated as was *273 an agreement that the record in Phillip G. Larson, 66 T.C. (April 27, 1976), would be incorporated as part of this case. The question of whether Somis was an association taxable as a corporation was decided in the Larson case. Applegate-Del Nido involves the same general partner and the same type of organization as was involved in the Larson case. The petitioners agree that the decision based on the record and argument made with respect to the limited partnerships in Phillip G. Larson,supra, should apply to Applegate-Del Nido as well. Our findings in that case are likewise incorporated herein by this reference. Grubin, Horth & Lawless, Inc. (hereinafter referred to as "GHL"), a California corporation, the sole general partner of both Applegate-Del Nido and Somis, was formed April 2, 1968, primarily to organize so-called "real estate syndications" as limited partnerships under the laws of the State of California. GHL kept its books on the basis of a fiscal year ending March 31. GHL had a paid-in capital of $21,300. From its incorporation to March 31, 1974, its capital and surplus ranged between a maximum of $49,593 at the close of the fiscal *274 year 1970 to a minimum of $18,764 as of the close of the fiscal year 1974. Cash on hand was negligible. GHL organized Applegate-Del Nido and managed and administered the partnership properties. Applegate-Del Nido was formed on or about October 15, 1969, under the limited partnership provisions of California Corporations Code Sections 15501-15531, for the purpose of owning, improving and operating the Applegate Apartments in Napa, California, and the Del Nido Apartments in Santa Rosa, California. Upon the formation of Applegate-Del Nido, GHL transferred to the partnership as a contribution to its capital, the right to acquire the Applegate Apartments and the Del Nido Apartments under contracts previously negotiated by GHL. GHL was not required to make any further contributions to Applegate-Del Nido. The limited partnership interest in Applegate-Del Nido was divided into 48 "units" at $8,890 per "unit." All of the "units" were sold to a total of 36 limited partners. The total capital contribution to Applegate-Del Nido by the limited partners was $426,750 in cash. GHL's total capital contribution to Applegate-Del Nido was reflected and carried at zero ($0.00) on the partnership's *275 books and records. GHL and the limited partners in the Applegate-Del Nido venture subscribed to an Agreement of Limited Partnership which defined their respective rights and obligations. The rights and liabilities of the parties to such agreement, except as to amounts or percentages, did not vary significantly from the rights and liabilities of the parties under the limited partnership agreement of Somis. Concurrently with the execution of the Agreement of Limited Partnership, the Applegate-Del Nido partners also executed a Certificate of Limited Partnership which was filed and recorded in accordance with California Law on October 29, 1969. The provisions of the Certificate were generally consistent with comparable provisions in the Agreement. Paragraph 8 of the Applegate-Del Nido Certificate of Limited Partnership provided: Limited Partners entitled to 60% or more of the profits of the limited partnership allocable to the Limited Partners may by a vote remove the General Partner. The election of a substitute General Partner shall be by an affirmative vote of the Limited Partners owning 60% or more of the profits of the partnership allocable to the Limited Partners. The *276 limited partnership may be terminated by the election of Limited Partners entitled to 60% or more of the profits of the partnership allocable to the Limited Partners. In the case of a termination of the partnership by the removal of the general partner, there would be a distribution of assets in accordance with the provisions of the Agreement unless the limited partners, by an affirmative vote of the limited partners owning 100 percent of the profits of the partnership allocable to the limited partners, elected to form a new partnership to continue the partnership business. After its formation, Applegate-Del Nido became the owner of the Applegate Apartments and the Del Nido Apartments site. Applegate-Del Nido purchased the Applegate Apartments from Devon Properties, Inc., for a purchase price of $562,000. The purchase price was paid by the execution of a promissory note dated October 28, 1969, in the amount of $562,000. The promissory note was secured by a Deed of Trust upon the Applegate Apartments dated October 28, 1969, which was given to Devon Properties, Inc., by Applegate-Del Nido to secure payment of the purchase price. Pursuant to Section 580b of the California Code of *277 Civil Procedure, in the event of default by Applegate-Del Nido on the promissory note, no money judgment would lie against Applegate-Del Nido and Devon Properties, Inc.'s remedy would be limited to requiring the sale of the Applegate Apartments pursuant to the Deed of Trust, with the proceeds to be applied to the promissory note. The Applegate Apartments consisted of 38 units. Simultaneously with the purchase of the Applegate Apartments, they were leased by Applegate-Del Nido to Gammon and Norman, a joint venture, under a net lease expiring December 31, 1977, including an option for Gammon and Norman to purchase the apartments. In 1974, Gammon and Norman went into default on the lease and the lease was canceled and Applegate-Del Nido took over operation of the apartments. The option in the lease expired unexercised at the time Gammon and Norman went into default. Shortly after its formation and acquisition of the Del Nido Apartments building site, Applegate-Del Nido contracted for the construction of the Del Nido Apartments. Of the total construction cost, $205,561 was paid in cash from the contributions of the limited partners of Applegate-Del Nido. Construction financing of *278 $825,000 was obtained from Santa Rosa Savings and Loan Association and a promissory note dated December 29, 1969, in the amount of $825,000 was executed in its favor. The promissory note was secured by a Deed of Trust dated December 29, 1969. After construction, Applegate-Del Nido arranged for permanent financing by executing an additional promissory note dated August 20, 1970, in the amount of $75,000 in favor of Santa Rosa Savings and Loan Association. Applegate-Del Nido and Santa Rosa Savings and Loan Association entered into a Modification Agreement dated August 20, 1970, under which the amount of the December 29, 1969, loan was increased by $75,000. Applegate-Del Nido executed a promissory note dated July 15, 1970, secured by a Deed of Trust, in the amount of $80,770 in favor of Affiliated Construction Company for the balance of the construction cost of the apartments. The California Code of Civil Procedure, Section 580b, does not apply to construction loans and accordingly, Applegate-Del Nido was liable for the $900,000 indebtedness to Santa Rosa Savings and Loan Association and the $80,770 indebtedness to Affiliated Construction Company, incurred in the construction *279 of the Del Nido Apartments subject to the limitation in Section 580d. [3]
In addition, after the formation of Applegate-Del Nido, GHL was entitled to receive a real estate commission in the amount of $12,000 upon the partnership's purchase of the Applegate Apartments from Devon Properties, Inc. GHL was also entitled to receive a commission and/or syndication fee upon the partnership's acquisition of the Del Nido Apartments; said fee was to be 17.3 percent of the cash invested in the Del Nido Apartment project by the limited partners. The limited partners also granted GHL and Frank Goodman (the general contractor of the Del Nido Apartments) an option to repurchase the Del Nido Apartments from Applegate-Del Nido during the sixth year *280 of operation of the partnership business. The option price was the acquisition price paid by the partnership plus 10 percent thereof. Approximately two months after the formation of Applegate-Del Nido, a limited partner transferred his limited partnership interest in Applegate-Del Nido to his wife. The limited partner requested of GHL that such transfer be accomplished. GHL wrote to the limited partner indicating that the substitution of his wife was acceptable and provided a partnership agreement and a certificate to be signed by the wife and the transfer was accomplished. Offering circulars, prepared by GHL, were distributed by GHL to prospective limited partners in Applegate-Del Nido. The circular advertised the limited partnership interests as "tax-sheltered real estate investments," and contained extensive descriptions of the underlying real properties, the investment terms, and the anticipated return on the proposed investments. Of the 48 limited partnership "units" sold in Applegate-Del Nido, 12 were sold by two employees of GHL, Robert L. Horth and Alan J. Parisse, without commission. Horth and Parisse held restricted broker's licenses issued by the National Association *281 of Security Dealers which authorized them to sell mutual funds, limited partnership interests and similar investments but not to sell stocks, bonds, or other corporate securities. Twenty-four of the Applegate-Del Nido "units" were sold by Robert Schmidt (a shareholder and director of GHL but not an employee) who was paid a commission by GHL on his sales. Schmidt also held a restricted broker's license. The remaining 12 Applegate-Del Nido "units" were sold by two financial planners holding restricted broker's licenses, both of whom were paid a commission by GHL. GHL had a 20 percent "subordinated" interest in the net proceeds resulting from the sale of the Applegate Apartments. GHL did not have any participation interest in profits or cash flow. Similarly, GHL did not have any participation interest in the sale or liquidation of the Del Nido Apartments. The amount by which GHL's participation interest was subordinated prior to December 31, 1971--i.e., the amount remaining in the limited partners' investment accounts (which amount was to be recovered by the limited partners before GHL was entitled to participate)--was as follows: End of Year
Subordinated Amount
1969
$53,500
1970
21,222
*282 For each taxable year 1969 to 1973, inclusive, Applegate-Del Nido reported losses on its U.S. Partnership Income Tax Returns as follows: Year
Profit (Loss)
1969
($183,396)
1970
( 140,877)
1971
( 125,254)
1972
( 111,693)
1973
( 82,858)
On their joint Federal income tax returns the petitioners deducted their distributive share of the partnership losses. Respondent disallowed said deductions on the grounds that Applegate-Del Nido was an association taxable as a corporation within the meaning of section 7701(a)(3). OPINION The petitioners have acquired limited partnership interests in two associations organized as limited partnerships under the laws of the State of California and doing business as "Somis" and "Applegate-Del Nido." The respondent contends that both are taxable as associations under section 7701(a)(3). With respect to Somis, the respondent's position was rejected in Phillip G. Larson,supra, and the decision in the Larson case is determinative of the issue with respect to Somis. The parties also recognized in their briefs the similarity between the limited partnership interests in the Somis partnership and the limited *283 partnership interests in the Applegate-Del Nido partnership. Upon a review of the facts, with respect to the Applegate-Del Nido partnership, the Court is unable to find any basis for distinguishing the ruling enunciated in the Larson case. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The parties agreed by stipulation that the use of the terms "partner" or "partnership," alone or in conjunction with the words "limited" or "general," refers to the descriptive designations of the entities and their members under the law of the State of California, and is not intended to characterize their status for purposes of the Federal income tax.↩
3. If pursuant to the power of sale provided in the Deed of Trust, the trustee sold the property after a default by the partnership, Section 580d provides as follows: No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust.↩